## No. 26944

**The People of the State of Colorado ex rel. Richard D. Lamm, Governor v. Richard L. Banta, Jr., Roger Cracraft, Charles A. Stoddard, Charles A. Watkins, and James H. Walker (Incumbent Commissioners) and Laurence L. Bitner, Patricia H. Havekost, Andra I. Schmidt, Richard M. Soash, and James H. Walker (Interim Appointees)**

(542 P.2d 377)

Decided November 10, 1975.

Holme, Roberts & Owen, Donald C. McKinlay, Jack L. Richtsmeier, for petitioner on behalf of respondents Interim Appointees.

Gorsuch, Kirgis, Campbell, Walker and Grover, Charles E. Grover, Joseph M. Montano, for respondents Incumbent Commissioners.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

This action, in the nature of *quo warranto,* was instituted in this court to resolve a dispute as to which group of respondents is lawfully entitled to hold positions of commissioner on the Colorado Highway Commission. The respondents are grouped and designated as "incumbent commissioners" and "interim appointees" solely for the purpose of distinguishing between them when they are referred to in this opinion.

We assume original jurisdiction in this case because it involves constitutional issues of compelling and urgent public importance. The resolution of this dispute by this court is necessary for the efficient and effective administration of the highway commission.

We herein rule that the "incumbent commissioners" are entitled to exercise the duties of these offices until their successors are duly qualified.

I.

Section 43-1-103(4), C.R.S. 1973 of the Department of Highways Act, states that members of the highway commission shall be appointed by the governor with the consent of the senate for terms of four years each. Pursuant to this statute, the "incumbent commissioners" (Banta, Cracraft, Stoddard, Watkins, and Walker) were appointed as members of the commission in 1971 for terms of four years ending March 1, 1975. On March 25, 1975, while the senate was in session during the first regular session of the Fiftieth General Assembly, Governor Lamm nominated respondent Walker for another four-year term and also respondents Bitner, Havekost, Schmidt and Soash ("interim appointees") for four-year terms ending March 1, 1979.

Governor Lamm sent the names of his five nominees to the senate for its consent. These nominations were referred to the committee on transportation for investigation and recommendation. On April 18, 1975, after conducting a hearing on the qualifications of the five nominees, the committee recommended to the senate that it consent to their appointments.

The senate thereafter remained in session for more than two months. During this period, however, it neither confirmed nor rejected the five nominees. On July 1, 1975, the senate adjourned *sine die* and is not scheduled to go into session until January 7, 1976. Subsequently, the "interim appointees" of the governor were duly sworn in as highway commissioners and filed their oaths with the secretary of state.

The senate's adjournment without taking any action to either confirm or reject the five nominees, and the subsequent effort of the nominees to qualify as interim highway commissioners, has created the present dispute between them and the "incumbent commissioners" as to which designated group is lawfully entitled to serve in these commissioner positions until the senate at a future session confirms the appointment of nominees of the governor.

The governor, as the petitioner, claims that the "interim appointees" have the right to act as members of the highway commission since they were appointed by him pursuant to *Colo. Const.* Art. IV, Sec. 6, which authorizes him to make interim appointments in these offices when a vacancy occurs or exists after the expiration of an incumbent's term. Art. IV, Sec. 6 states:

"*Appointment of officers - vacancy.* (1) The governor shall nominate, and, by and with the consent of the senate, appoint all officers whose offices are established by this constitution, or which may be created by law, and whose appointment or election is not otherwise provided for, and may remove any such officer for incompetency, neglect of duty, or malfeasance in office. If the vacancy occurs in any such office while the senate is not in session, the governor shall appoint some fit person to discharge the duties thereof until the next meeting of the senate when he shall nominate and, by and with the consent of the senate, appoint some fit person to fill such office."

The governor contends that vacancies occurred or reoccurred when the senate adjourned *sine die* on July 1, 1975 without acting upon his duly submitted nominations. In other words, it is the governor's position that when the senate adjourned *sine die*, his constitutional authority to make interim appointments was activated.

On the other hand, the "incumbent commissioners" claim that they are authorized to remain in these positions by virtue of *Colo. Const.* Art. XII, Sec. 1 which provides that a person holding a state office shall "exercise the duties of such office until his successor is duly qualified. . . ." The thrust of their argument is that until the nominees of the governor are duly qualified by senate confirmation, they are constitutionally authorized to remain in office until the senate is in session and confirms the appointment of the nominees. They also argue that the governor's power to make interim appointments under *Colo. Const.* Art. IV, Sec. 6 is clearly limited to filling vacancies in those offices where the term expires when the legislature is not in session.

## II.

The view is generally taken in most jurisdictions that no vacancy exists at the expiration of the incumbent's term to activate the interim appointment power of a governor, where the holdover provision in the statute or constitution specifies that the incumbent shall continue to hold office until his successor is duly qualified. Under this rule, the incumbent's term of office is extended, and no vacancy occurs. The incumbent remains as a *de jure* officer until his successor is appointed and duly qualified. In widely-cited *People ex rel. Baird v. Tilton*, 37 Cal. 614 (1869), this generally accepted rule of law is adopted and comprehensively discussed. *See also* 63 *Am. Jur.* 2d *Public Officers and Employees*§ § 138, 157. Annot., 164 A.L.R. 1248.

The rule of *Tilton* was approved and applied in the following cases: *State ex rel. McCarthy v. Watson*, 132 Conn. 518, 45 A.2d 716 (1946); *State ex rel. Olsen v. Swanberg*, 130 Mont. 202, 299 P.2d 446 (1956); *People ex rel. Warren v. Christian*, 58 Wyo. 39, 123 P.2d 368 (1942). *See also Graham v. Lockhart*, 53 Ariz. 531, 91 P.2d 265 (1939); *People ex rel. Mitchel v. Sohmer*, 209 N.Y. 151, 102 N.E. 593 (1913); *State ex rel. Smith v. Tazwell*, 166 Or. 349, 111 P.2d 1021 (1941); *State Board of Education v. Commission of Finance*, 122 Utah 164, 247 P.2d 435 (1952); *State ex rel. Warder v. Gainer*, 153 W. Va. 35, 167 S.E.2d 290 (1969).

Had the statute here provided for a continuation of the term until a successor was duly qualified, there would, of course, have been no question but that under this rule the incumbent commissioners would have remained in office *de jure* until the senate confirmed the governor's nominees.

## III.

In Colorado, a variant of the general rule has evolved because our case law has construed the constitutional holdover provision in a different

way. In *Walsh v. People ex rel. McClenahan*, 72 Colo. 406, 211 P. 646 (1922), the incumbent public trustee refused to deliver his office to the man appointed by the governor when the incumbent's term expired *during the adjournment of the legislature*. The statute creating the office provided that the governor could appoint someone to the office by and with the consent of the senate for a term of four years. However, it did not state how vacancies were to be filled or whether the incumbent could hold over after his term and until his successor was appointed. Therefore, *Colo. Const.* Art. XII, Sec. 1, which states that "every person holding any civil office . . . shall . . . exercise the duties of such office until his successor is duly qualified. . . ." became operable.

The *Walsh* court held that this language indicated that an officer does not "hold over" his office but merely stays on with the authority to discharge the duties of the office as a mere "locum tenens." As such, the officer stays on as a *de facto* officer and can be removed by the governor's interim appointment of another person to discharge the duties of the office until the legislature convenes and the senate consents to the appointment of a governor's nominee. The court held that the provision of Art. XII, Sec. 1, under which an officer shall "exercise the duties" of the office, rather than hold office, requires a departure from the general rule that a holdover provision extends an officer's term beyond the expiration of his term and until his successor is duly qualified.[1]

Premised on this interpretation, this court declared in *Walsh* that a vacancy under *Colo. Const.* Art. IV, Sec. 6 results upon the expiration of a term, thus triggering the *ad interim* appointment powers of the governor.

Had the constitutional interpretations in *Walsh* been wholly followed in *Murphy v. People ex rel. Lehman*, 78 Colo. 276, 242 P. 57 (1925), the "interim appointees" would have been lawfully entitled to take over from the "incumbent commissioners" upon their formal appointment as interim highway commissioners by the governor after the senate adjourned *sine die*.

In *Murphy*, this court restricted the application of *Walsh* to those offices with terms expiring *while the legislature is not in session*. The governor had nominated a person for a term on the state board of land commissioners to succeed the incumbent whose term expired during the legislative session. The legislature postponed action on the nomination for lack of time, since it was submitted on the day of adjournment.[2] The gov-

---

[1] *Compare, People v. Osborne*, 7 Colo. 605, 4 P. 1074 (1884), where this court approved the general rule that vacancies do not occur at the expiration of a term, so long as a *statute* provides that the incumbent should hold over until his successor is duly qualified. Under this provision, the incumbent remains in office after his term as a *de jure* officer.

[2] The dissenting opinion observed that at oral argument it was conceded that the governor had submitted the name of another person for the office at the beginning of the legislative session, but had withdrawn it before the senate acted upon it.

ernor then appointed his nominee to this office. The nominee demanded the office from the incumbent who refused to surrender it. This court stated that the incumbent was entitled to the office.

■ In this fact situation, *Murphy* announced the rule that, if the term of office expired while the senate is in session, the interim appointment power of the governor under *Colo. Const.* Art. IV, Sec. 6 is never activated.

■ The ruling in *Murphy* is controlling in this dispute. Accordingly, we hold that since the terms of the "incumbent commissioners" expired on March 1, 1975 while the senate was in session, the interim appointment power of the governor could not be invoked. Therefore, the "incumbent commissioners" are entitled to remain as highway commissioners until their successors are duly qualified as provided in *Colo. Const.* Art. XII, Sec. 1, our so-called "holdover provision."

■ The method by which the "interim appointees" sought to become interim highway commissioners would not suffice if we had departed from the *Murphy* precedent in resolving this dispute. This is now academic, but we believe it of value to state that the interim appointment power of the governor under *Colo. Const.* Art. IV, Sec. 6 must be exercised exclusively by him and by his express executive order.

### IV.

The *Murphy* precedent has now been the established law of this state for 50 years. Undoubtedly, the legislature over the years has enacted various statutes with the *Murphy* precedent in mind. It appears rather evident that in 1968, when the legislature enacted changes in the Department of Highways Act (Sec. 43-1-101, *et seq.*, C.R.S. 1973), and particularly, when it set March 1st as the termination date for the four-year terms of members of the State Highway Commission, the state of the law as expressed in *Murphy* was a guideline.

The senate, when it adjourned *sine die* on July 1, 1975 without either confirming or rejecting the governor's nominees, had the right to consider the consequences in the light of the *Murphy* precedent. It is the long established case law in Colorado and the legislature was certainly entitled to follow it.

Because of the foregoing reasons in particular, we adhere to the doctrine of *stare decisis* in resolving the issues of this case.

■ However, we are now firmly convinced that for the future the *Murphy* precedent must be eliminated as the case law which controls and substantially restricts the interim appointive power of the governor as defined in our constitution. The *Murphy* precedent, in our view, has no viability for the future. It may cause, rather than prevent, impasse situations, as in this case, between the executive and legislative branches of government. *Walsh v. People ex rel. McClenahan, supra*, for the future will stand as the case law pertaining to the accepted interpretation of *Colo. Const.* Art. XII, Sec. 1. We therefore prospectively overrule *Murphy v.*

*People ex rel. Lehman, supra*, as of the date when the second senate session of the Fiftieth General Assembly adjourns *sine die.*

In making our decision to overrule *Murphy* prospectively, we have conducted comprehensive research because it is a precedent of long standing. We do note, however, that our court has not previously been afforded the opportunity presented here to consider in depth the rule of the *Murphy* case and some of its ramifications. Had such an opportunity been presented, the *Murphy* case might not have survived this long. *Compare, Evans v. Board of County Com'rs. of the County of El Paso*, 174 Colo. 97, 482 P.2d 968 (1971) in which this court overruled the long-standing case law of sovereign immunity. *See* also the excellent analysis of the law on prospective overruling in 42 N.Y.U. L. Rev. 631 by the Honorable Walter V. Schaefer of the Supreme Court of Illinois and the cases cited therein including *Great Northern Railway Co. v. Sunburst Oil and Refining Co.*, 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932), a leading case on this subject.

## V.

Under the precedent of *Walsh v. People ex rel. McClenahan, supra*, the language of *Colo. Const.* Art. XII, Sec. 1 (the holdover provision) defines an officer who holds over as a mere "locum tenens" or, in other words, a *de facto* officer. Based on this definition, therefore, a vacancy occurs when the term of office expires. Under the clear language of *Colo. Const.* Art. IV, Sec. 6, the governor has no interim appointive power while the senate is in session. If, however, such a vacancy continues until a time when the senate is not in session, the interim appointive power of the governor then comes into being.

## VI.

■ In summary, we rule that the respondents designated as "incumbent commissioners" herein are entitled to remain as commissioners on the Colorado Highway Commission until their successors are nominated and with the consent of the senate are appointed by the governor during the next regular session of the senate. (Fiftieth General Assembly).

■ The court costs incurred by the "incumbent commissioners" are assessed to the petitioner. It is requested, on behalf of the "incumbent commissioners," that reasonable attorney fees incurred by them in this proceeding be also assessed against the petitioner. There is no statute which either expressly or implicitly provides for this. Without such authority, we will not grant this request. *Ellis v. Moses*, 76 Colo. 214, 230 P. 802 (1924).

Accordingly, we therefore enter judgment for respondents designated as "incumbent commissioners" and dismiss the petition.

MR. JUSTICE LEE took no part in the discussion or determination of this case.