The Honorable Sharon Priest Secretary of State State Capitol Little Rock, Arkansas 72201-1094
Dear Ms. Priest:
This is in response to your request for an opinion on whether the six judges appointed to the expanded Court of Appeals, whose terms expire December 31, 1998, are "authorized to run for election from the districts in which they reside." You enumerate in your request what you believe to be the relevant facts and law, and note that your office will be placed in a position of having to address inquiries concerning this issue as the upcoming filing period for the next election approaches. You state the following:
 1. A.C.A. § 16-12-103 (Repl. 1994 Supp. 1995)[1]] authorized the expansion of the Court of Appeals by adding three judges to serve three-year terms beginning January 1, 1996, and continuing through December 31, 1998, and three judges to serve two-year terms beginning January 1, 1997, and continuing through December 31, 1998. The statute provided that all six judges were to be appointed at large.
 2. Inasmuch as the six appointed judges are at-large appointments, it would appear that they are not disqualified from seeking election from the district in which they reside. This conclusion appears to be analogous to circumstances addressed by previous Attorney General Opinion Nos. 91-379 and 91-447, which were determined not to violate Section 2 of Amendment 29 to the Constitution of Arkansas.
 3. The Court of Appeals was originally established in 1979 by the Arkansas General Assembly as authorized by Amendment 58 of the Arkansas Constitution. Pursuant to Act 208 of 1979, the Court of Appeals Apportionment Board was mandated to establish six districts. The Board established the six districts that currently comprise the Court of Appeals, and those districts have not been changed since their creation.
 4. Each of the existing six districts has one of the appointed judges residing in that district. This fact was known by the 81st General Assembly, which had the opportunity to change existing district boundaries or the number of districts, but chose not to change either. However, the 81st General Assembly did appropriate funding for the twelve-member Court of Appeals beyond the expiration of the terms of the six appointed judges on December 31, 1998.
 5. A.C.A. 16-12-101(b)(2) states: `On and after January 1, 1997, the Court of Appeals shall be composed of twelve (12) judges.'
 6. A.C.A. 16-12-101(e) states: `Each of the judges shall be a resident of the district from which elected and shall have the same qualifications for holding office and shall receive the same salary, expenses, and other allowances as provided by law for other judges of the Court of Appeals.' Because there must be twelve judges on the Court of Appeals, because there are only six districts, and because the six appointed judges each reside in a separate district, it appears that the Court of Appeals is authorized to continue with two judges from each district.
Your question with regard to the statements above is, again, whether the six appointed judges, whose terms expire December 31, 1998, are authorized to run for election from the districts in which they reside. This question, upon examination, actually contains two component parts: 1) from what districts will the successors to the appointed Court of Appeals judges be chosen; and 2) are the sitting appointed judges eligible for election to these positions?
 SUMMARY OF CONCLUSIONS
The relevant law regarding these issues will be set out below. To summarize my conclusions, however, it is my opinion that ultimately, only the General Assembly itself, or a court presented with the question can definitively resolve the first issue, and a court determination may ultimately be necessary to resolve the second. The relevant acts provide that the "81st General Assembly shall determine the number and location of Court of Appeals districts from which the members of the Court of Appeals shall be selected." Act 15 of 1995 (1st Ex. Sess.) The members of the 81st General Assembly still sit.[2] Although no legislation was passed to determine such districts during the 1997 regular session of the General Assembly, such action could be taken in a special session of that body. Assuming, however, that no such action is taken in a special session prior to the expiration of the filing period for these positions, the available alternatives for resolution of the first issue, concerning the proper districts from which candidates will run, appear to be at least fourfold. Either: 1) because no action was taken by the General Assembly to provide for districts from which candidates could run, the terms of the appointed judges merely expire December 31, 1998, and no one is eligible to file for election to these positions and they will cease to exist January 1, 1999; 2) candidates for these positions are authorized to file and run "at large" (i.e., statewide) for the positions; 3) candidates are authorized to run for these positions from the six existing Court of Appeals districts, resulting in the election of two of the twelve judges from each of the six existing districts; or 4) because of the inaction of the General Assembly, no one is authorized to file for the six additional positions (having no districts from which to run), and the sitting appointed judges currently holding these six positions are authorized to hold over under Arkansas Constitution, art. 19, § 5 until the General Assembly provides for the election of their successors.
It is my opinion, as more fully detailed below, that the first option is clearly not consistent with the legislative intent regarding these positions. The second alternative, at-large elections, would be similarly contrary to the legislative intent. The third alternative, election from the six existing districts, would as you suggest, be a workable solution, and a court faced with the question might undertake the judicial activism necessary to fashion this remedy, but I cannot conclude, based upon the language of the relevant acts, that this represents the legislative intent markedly more than the requiring of at-large elections. The fourth alternative, the appointed judges holding over, appears to be the most consistent with Arkansas law in the face of a complete failure of the General Assembly to provide for the election of these officers.
My conclusion above as to the first issue presented makes it unnecessary, at least for this upcoming election cycle, to address the second issue, regarding the eligibility of the sitting appointed judges to seek and hold these positions. I will note, however, that the current legislation authorizes these judges to seek election to the court after their terms expire. See Act 15 of 1995 (1st Ex. Sess), § 1. A question arises as to whether the prohibition of Arkansas Constitution, Amendment29 (prohibiting appointed officers from succeeding themselves), would render this provision unconstitutional. It is my opinion, as more fully detailed below, that Amendment 29 does not apply to the current judgeships held by the appointees. It is my opinion, although the answer is not entirely clear, that the provisions of Act 15 allowing the appointees to seek election to these positions would be upheld under an Amendment 29 challenge.
 LEGISLATION
A summary of the provisions of the relevant acts leading to the current situation will be helpful in addressing your questions. The first enactment creating these new positions was Act 1085 of 1993, which increased the size of the existing Court of Appeals from six to twelve members effective "July 1, 1995." The act provided that the "1995 General Assembly" was to determine the number and location of the districts from which the members of the court would be selected. The Governor was to appoint one person from each of the new districts to serve from July 1, 1995 through December 31, 1996, and the qualified electors of the new districts were to elect the additional judges at the November 1996 general election and they were to take office January 1, 1997. The act provided that none of the appointed judges were eligible to seek election to the court in the 1996 election.
In 1995, however, the Arkansas General Assembly, in regular session acting prior to the July 1, 1995 operative date for the six new positions, passed Act 1323 of 1995, which delayed the implementation of the additional six judgeships. This act provided that the size of the Court of Appeals should be increased from six to twelve judges effective "January 1, 1996," and that the "80th General Assembly" "shall determine the number and location of the districts." The Governor was to appoint one member from each of the new districts to serve from January 1, 1996 through December 31, 1996, and thereafter the qualified electors of the new districts were to elect the additional judges from the newly drawn districts at the November 1996 election to take office January 1, 1997. Again, the act provided that none of the appointed judges were eligible to run for election to the court at the 1996 general election.
The remaining relevant acts were passed in the first extraordinary session of 1995, which occurred in October of 1995. Acts 11 and 15 of 1995 (1st Ex. Sess), are identical acts, except that Act 15 contains an additional sentence. These acts provided for a Court of Appeals composed of six members until January 1, 1996 (the existing six elected judges), which would increase to nine members on January 1, 1996 until January 1, 1997, at which time and thereafter the court would consist of twelve members. The Governor was to appoint three persons from the state "at large" to serve from January 1, 1996 through December 31, 1998, and three persons from the state at large to serve from January 1, 1997 through December 31, 1998. These appointments were made and these appointees are currently serving. These acts also provided that the "81st General Assembly shall determine the number and location of Court of Appeals districts from which the members of the Court of Appeals shall be selected."[3] The acts also provided that the "qualified electors of the districts drawn by the 81st General Assembly shall elect the additional Court of Appeals judges at the November 1998 general election to take office January 1, 1999." The additional sentence in Act 15 of 1996 (1st Ex. Sess.), which is not contained in Act 11, states that: "All of those appointees shall be eligible to seek election as a member of the court in the 1998 general election." The emergency clause to each act provides that the act "is needed to provide for the appointment of additional Court of Appeals judges from the state [sic] of Arkansas since the 80th General Assembly meeting in regular session failed to prescribe new districts. . . ." These acts thus provided for the appointment of the six additional judges "at large," three to serve as appointees for three years, and three to serve as appointees for two years, and left the drawing of the districts to the succeeding "81st General Assembly." As of this date, that body has also failed to enact any legislation drawing the districts in question.[4]
 ANALYSIS
As can be seen from the legislation above, the districts from which the appointed judges' successors are to be elected are to be determined by the "81st General Assembly." No contingency plan is provided in the event that body fails to draw districts. The relevant portion of the legislative scheme is hinged upon the legislative drawing of the districts. As noted previously, it is still possible that the legislature could meet in special session to enact the requisite legislation. That course of action does not appear imminent, however, and given the upcoming election season and the need for candidates to make plans for the election, some resolution of the question you pose is necessary. The inaction of the General Assembly in this matter has left a void in the legislative plan to elect judges to take office January 1, 1999. We have no convincing evidence of a legislative intent to allow the judges to run from the existing six districts, or to run at large, or in any other fashion. It was clearly intended that this matter would be taken up and resolved by action of the 81st General Assembly.
It is evident, in my opinion, that the legislature did not intend for the six additional judgeships to expire on January 1, 1999. Clearly, it has appropriated funds for the expanded court after that date (see Acts 1997, Nos. 3 and 187), and has left unamended a state law (A.C.A. §16-12-101(b)(2) (Supp. 1995)) which provides for a twelve member court on and after January 1, 1997. It is my opinion that the legislature intended these positions to be continuing.[5] It has simply failed to provide the mechanism by which they might be filled by popular election.
In addition, there is, in my opinion, no express or implied intention to have the additional judgeships elected from the state at large. Although the current appointees serve at large, the relevant legislation clearly envisions the election of the additional judgeships from districts by the "qualified electors" of the districts. In addition, the anomaly of having six Court of Appeals judges run from districts, and six run state-wide is one which I cannot lightly infer from the relevant legislation.
Neither can I infer any significant intent to elect the additional judges from the existing six districts. It may be true, as you suggest, that the General Assembly knew that each of the existing six districts had one of the appointed judges residing therein, and with that knowledge failed to make any changes in the number or location of districts. In my opinion, however, a legislative intent to require the additional judgeships to be elected from the six existing districts cannot be extrapolated from the inaction of the General Assembly in light of the facts you state. As noted in Sutherland, Statutory Construction (5th Ed): "Legislative inaction has been called a `weak reed upon which to lean' and a `poor beacon to follow' in construing a statute." Id. at § 49.10. If the legislature had intended the additional judicial positions to be elected from the six existing districts, it would have been easy enough to so state. In addition, the fact that the current appointed judges reside one each in the existing districts can be attributed, not to any action of the General Assembly, but rather, to the action of the respective Governors making the appointments, who may have as nearly structured such appointments for the purpose of ensuring statewide representation on the newly expanded court as for the purpose of protecting the presumptive candidacy of the appointees. In short, I cannot infer from the residency of the appointees, or the General Assembly's knowledge of such residence, any intention as to the drawing of the districts, particularly in light of the self-imposed duty placed upon the 81st General Assembly to actually undertake some drawing of districts.
Where then, does that leave the situation with regard to the upcoming filing period for these positions? The General Assembly has created six new continuing offices, provided for their filling by appointment for a stated time and indicated that thereafter they are to be elective positions. The legislature has failed, however, to make the requisite provision for the election of these officers. Prospective candidates have no districts from which to run. For this situation, the Arkansas Constitution provides a remedy. Article 19, § 5 provides that: "All officers shall continue in office after the expiration of their official terms until their successors are elected and qualified." See also A.C.A. § 21-1-402 (Repl. 1996). This provision's purpose is to prevent vacancies in office. See generally, 67 C.J.S. Officers and Public Employers § 72. It appears to apply to appointed as well as elected officeholders, at least where the appointed officeholder's successor is to be elected. Id.
at § 72(b). Cf. also Barnett v. Sutterfield, 129 Ark. 461 (1917) andSweeney v. State, 23 Ariz. 435, 204 P. 1025 (1922). It can even apply to officers appointed to fill vacancies in unexpired terms. 67 C.J.S.Officers Public Employees § 72(b), and McCraw v. Pate, 254 Ark. 357,494 S.W.2d 94 (1973).
Although there is no Arkansas case squarely on point, there are a number of cases from Arkansas providing general support for the conclusion that the six appointees should hold over until the General Assembly makes provision for the election of their successors. See Weber v. Pryor,Governor, 259 Ark. 153, 531 S.W.2d 708 (1976) (legislature may extend the terms of chancellors, after reapportionment, as long as done reasonably and without effort to punish or reward any judicial officer); McCoy v.Story, 243 Ark. 1, 417 S.W.2d 954 (1967) (county judge may properly hold over until general election in absence of legislation providing for a special election); Weas v. Montgomery, 180 Ark. 989, 23 S.W.2d 969 (1930) (circuit judge deemed to be holding over when election was held in wrong year and not held at all in correct year); Hendricks v. Hodges, Secretaryof State, 122 Ark. 82, 182 S.W. 538 (1916) (the legislature may change the beginning of terms of circuit judges and short and reasonable extension of terms is appropriate under the holdover provisions of article 19, § 5 absent any intention to render elective offices appointive); and State v. Scott, 9 Ark. 270 (1848) (new amendment providing for popular election of circuit judges (rather than by appointment of the General Assembly), does not automatically oust sitting circuit judges on its adoption, but rather, they hold over until provision can be made by the General Assembly for the election of their successors).
Cases from other jurisdictions also support the conclusion that the appointed judges should hold over. In State Board of Education v.Commission of Finance, 122 Utah 164, 247 P.2d 435 (1952), a case which relied upon the Arkansas case of State v. Scott, above, the Utah Supreme Court held that where a constitutional amendment changed the State Board of Education from a membership of appointed to elected members, but thereafter the General Assembly failed to provide for the election of the elected members, the appointed members of the Board held over and continued to validly act. Other cases which provide support for the same conclusion are Garcia v. Miller, 261 Ga. 531, 408 S.E.2d 97 (1991) (judges whose districts were subject to a federal voting rights order can hold over as a matter of state law when no elections were held because of federal litigation); State ex rel. Martin v. Preston, 325 N.C. 438,385 S.E.2d 473 (1989) (extension of terms of superior court judges in order to eliminate staggered terms after increase in number of such judges was appropriate under the "holdover" provisions of North Carolina Constitution; dismissing concerns over the right of the public to elect its judges at stated intervals, and the rights of candidates to run for the positions at such intervals); and People ex rel. Lamm v. Banta,189 Colo. 474, 542 P.2d 377 (1975) (where Governor appointed three new highway commissioners but the General Assembly adjourned without confirming them, the incumbents hold over).
While none of the cases cited above involve the failure of the General Assembly to provide districts from which to elect officers, the general constitutional principles the various courts applied to those fact situations are similarly applicable to these facts. In addition, it is well to point out that the General Assembly has complete discretion under the provisions of Arkansas Constitution Amendment 58 to provide for the "selection" of the judges of the Court of Appeals. It is within the power of the General Assembly to permanently provide that additional or future judges of the Court of Appeals shall be appointed rather than elected. In my opinion no constitutional objection will lie against the holding over of these appointed judges. Cf. State ex rel. Martin v. Preston, supra.[6]
The next issue for resolution is whether the six appointed judges are eligible to run for the position of Court of Appeals judge at the 1998 general election. If the General Assembly takes no action to draw districts prior to the 1998 general election, it is my opinion, as stated above, that the six appointees hold over, and there will be no election for these positions at the general election in 1998. Because your question may ultimately arise again, however, at a future election, I will proceed to address it.
As noted previously, Section 1 of Act 15 of 1995 (1st Ex. Sess.) provides that: "[a]ll of those appointees shall be eligible to seek election as a member of the court in the 1998 general election." A possible issue is raised as to the constitutionality of this statute (or any later similar statute) in light of Arkansas Constitution, Amendment 29. It has been variously held that the creation of a new office creates a "vacancy" therein. See, e.g., Howell v. Howell, 213 Ark. 298, 208 S.W.2d 22
(1948); State ex rel. Wood v. Cotham, 116 Ark. 36, 172 S.W. 260 (1914) and State ex rel. Smith v. Askew, 48 Ark. 82, 2 S.W. 349 (1886). I and my predecessor have each opined that where an elective office is newly created, a vacancy occurs at its inception and the provisions of Amendment 29 govern the filling of the vacancy. See, e.g., Ops. Att'y Gen. 96-146; 94-285; 90-010; and 86-572. Amendment 29 requires vacancies in all elective state, district, circuit, county and township offices (with certain exceptions) to be filled by the Governor and contains a provision which states that: "[n]o person appointed under Section 1 [of the Amendment] shall be eligible for appointment or election to succeed himself." It is this latter provision which is relevant to your question as to whether the six sitting appointed judges may run for election to the Court of Appeals. You state that it appears that these judges would not be prohibited from seeking election from the districts from which they reside, relying on Ops. Att'y Gen. 91-379 and 91-447, which concluded that governor-appointed quorum court members (appointed under Amendment 29 to fill vacancies) could seek the same office if the quorum court district boundaries had changed so as to render them seeking office to a new district, and not strictly speaking, succeeding themselves. The argument you make is that because the appointed judges are now serving at large, they would not be prohibited from seeking election from districts, because in doing so they would not be succeeding themselves, but running for distinct positions.
In my opinion it is unnecessary to even reach this argument. In my opinion, a threshold question arises as to the applicability of Amendment 29 to these appointed judgeships. Amendment 29 applies to "all elective
state, district, circuit, county, and township offices" with certain exceptions not relevant here. (Emphasis added). "Vacancies" in the elective positions mentioned in Amendment 29 are filled by appointment by the Governor and the gubernatorial appointees may not succeed themselves. It appears that from their inception, and as of this date, the six additional Court of Appeals judgeships are appointed positions. Again, the General Assembly has complete discretion to provide for the selection of Court of Appeals judges. It may provide that they be appointed for a stated period of time, thereafter to be elected, or it may provide for their permanent appointment. This is to be distinguished from offices which are required by the constitution or the General Assembly to be elected. All vacancies in "elective" offices, absent an exception, are governed by Amendment 29 and subject to the restrictions thereof. If a new constitutional or statutory elective office is created, and a "vacancy" therefore arises upon its inception under relevant Arkansas caselaw, the appointment of a temporary appointee to serve until the election can be conducted is clearly subject to the provisions and restrictions of Amendment 29. This is not so for appointive positions, which are not required by either the Constitution or state statutes to be filled by election. Each of the Attorney General opinions issued stating that the creation of a new office creates a "vacancy" which must be filled and governed by the provisions of Amendment 29, involved an office which was either constitutionally or statutorily designated as "elective." See Ops. Att'y Gen. 96-146 (filling of newly created circuit-chancery judgeships governed by Amendment 29); 94-285 (filling of newly created circuit-chancery judgeships governed by Amendment 29); 92-242 (filling of vacancy on Court of Appeals, which was by statute an "elective" position, governed by Amendment 29);[7] 90-010 (filling of newly created circuit/chancery judgeships governed by Amendment 29); and 86-572 (filling of newly created circuit judgeship governed by Amendment 29).
Although the General Assembly has stated its intention that these judgeships eventually become elective positions, it appears to have initially created them as appointive, and made them so for a longer period of time than at least three of the appointees would serve under Amendment 29, § 4. In addition, the legislature has clearly provided that the appointees may succeed themselves, which provision would be contrary to Amendment 29. It appears that the six new Court of Appeals judgeships were not initially created as elective positions, but were rather, for a time, created as "appointive" offices to provide for needed additional Court of Appeals judges until such time as districts could be drawn and the judgeships made elective. If the offices which the current appointees hold are not "elective," the provisions of Amendment 29 do not apply. In my opinion the appointees were not "appointed under Section 1" of Amendment 29 to fill a vacancy in an "elective" office so as to trigger the prohibition of Amendment 29 § 2 against succeeding oneself.[8] This conclusion is supported by the fact that an existing law authorizes the candidacies of the incumbent appointees. All doubts will be resolved in favor of the constitutionality of this provision. See, e.g., Stone v.State, 254 Ark. 1011, 498 S.W.2d 634 (1973). Of course, there is no controlling Arkansas case law on point, and thus a judicial determination would be necessary to resolve the matter definitively.
This conclusion makes it unnecessary to discuss your contention that such judges would not be ineligible to run for office in the districts in which they reside, due to the fact that they currently serve at large, and running from a district would amount to running for a distinct office. Cf. Ops. Att'y Gen. 91-379 and 91-447. Those opinions, as is noted in each, were issued without the benefit of controlling Arkansas case law, and it was noted that a conclusive determination would require a judicial analysis of the facts governing the geography of particular districts.
 CONCLUSION
In conclusion, it is my opinion, due to the General Assembly's failure to enact legislation creating districts from which prospective candidates for the six additional judgeships could run, that the current appointees hold over under Arkansas Constitution art. 19, § 5 until provision can be made for the election of their successors. Additionally, in my opinion, the existing appointees would not be ineligible to seek election to the Court of Appeals at the next relevant election under the provisions of Amendment 29. The issues you have presented for resolution appear to be novel ones, however, and a controlling court decision may be necessary to conclusively resolve them.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] I assume this reference is to A.C.A. § 16-12-101.
[2] In my opinion, the term "81st General Assembly" refers to the body comprised of the various members elected to serve during the relevant biennium, and not strictly to the 1997 regular session of such body. Cf.Chenault v. Carter, 332 S.W.2d 623 (Ky. 1960). See also generally 81A C.J.S. States §§ 40 and 49.
[3] This language contemplates the redrawing of the districts from which all members of the Court of Appeals are elected. It is thus broad enough to include the redrawing of the districts from which the current six elected judges are chosen. An argument could be made under this provision that the elected judges, at least those up for election in 1998, will also have no districts from which to run, and they also might have to run at large or might be properly considered as "holding over" under Arkansas Constitution, art. 19, § 5 until the General Assembly draws new districts. I cannot envision the Arkansas Supreme Court reaching this conclusion, however. The "terms" of the existing six elected judges were not to be affected by the relevant legislation, and requiring them to run at large or converting their status to that of "holdover" judges would be both unnecessary and unworkable in light of the legislative scheme. In addition, until the General Assembly actually draws the new districts, there is nothing in the most recent legislation which is inconsistent with the election of the existing elected judges from their present districts.
[4] At least four attempts were made by the 81st General Assembly during the regular session of 1997 to pass legislation establishing these districts. See S.B. 568; S.B. 747; H.B. 1942; and H.B. 1951. Each failed of adoption.
[5] Although Arkansas Constitution, art. 19, § 9 prohibits the legislature from creating any permanent state office not provided for in the Constitution, Amendment 58 thereto specifically authorizes the creation of the Court of Appeals, and the continuation of these positions would therefore not run afoul of art. 19, § 9. Cf. Lucas v. Futrall,84 Ark. 540, 106 S.W. 667 (1907).
[6] There appears to be a split of authority on the question of whether an officeholder who is permitted to "hold over" under a provision such as art. 19, § 5 is a de jure or a de facto officer. See, e.g., 67 C.J.S.Officers § 72(a), notes 34 and 50. In Arkansas, however, the rule appears to be that "where the legal incumbent of the office is authorized to hold over after the expiration of his term until his successor is elected and qualified, the period of his holding over is as much a part of his term as the regular period fixed by law. [Citation omitted.] He has the legal right during that period to protect his incumbency from one who unlawfully invades it or to sue a usurper to recover it." Faulkner v.Woodard, 203 Ark. 254, 156 S.W.2d 243 (1941), citing Wood v. Miller,154 Ark. 318, 242 S.W. 573 (1922).
[7] It should be noted that the filling of vacancies occurring in the other six existing Court of Appeals judgeships, which are currently by statute designated as "elective" positions, is governed by the provisions of Amendment 29, and it is my opinion that temporary appointees to fill vacancies in these elective positions may not succeed themselves in office. See again, Op. Att'y Gen. 92-242.
[8] This conclusion, at first blush, may seem inconsistent with my conclusion above that article 19, § 5 (the "holdover" provision) is applicable to these judgeships. It might be argued that the two conclusions attempt to have it both ways by concluding that the additional judgeships are "elective offices" for purposes of applying art. 19, § 5, but are "appointive offices" for purposes of Amendment 29. Provisions such as art. 19, § 5 have been held to apply solely to "elective offices," which are regularly filled by election and only occasionally filled by appointment, as on their creation, or on the occurrence of vacancies therein. See 67 C.J.S. Officers PublicEmployees § 72(b) and Sweeney, supra. In my opinion, however, the plain language of art. 19, § 5 is applicable to these judgeships. Although at their creation, the judgeships became appointive positions, the legislative scheme clearly envisions that their successors will at some point be "elected and qualified," which is the pertinent language of art. 19, § 5. On the other hand, the current judges were not, according to the expressed evidences of legislative intent, appointed to fill vacancies in "elective" offices for purposes of Amendment 29. The judgeships were made appointive for a stated time, with the successors to be elected. Simply put, the former provision (art. 19, § 5) looks forward to the election of a successor, and the latter provision (Amendment 29) looks backward at the circumstances surrounding the appointment of the appointee. This difference accounts for the applicability of the former, and the non-applicability of the latter. The distinction may be a subtle one, but it is, in my opinion, a valid one.