**HYGIENE FIRE PROTECTION DISTRICT, Plaintiff–Appellee,**

v.

**BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF BOULDER, Defendant–Appellant.**

No. 07CA2354.

Colorado Court of Appeals, Div. V.

Dec. 11, 2008.

Frascona, Joiner, Goodman & Greenstein, P.C., Joseph Adams Cope, Boulder, Colorado, for Plaintiff–Appellee.

H. Lawrence Hoyt, County Attorney, Pat A. Mayne, Deputy County Attorney, Boulder, Colorado, for Defendant–Appellant.

Opinion by Judge GABRIEL.

The Board of County Commissioners of Boulder County (County) appeals the Ruling and Order Regarding Motion for Summary Judgment and C.R.C.P. 106(a)(4) Review (Judgment) issued by the district court in favor of Hygiene Fire Protection District (District). We affirm.

## I. Background

The District wanted to build a second fire station within its service area, which is located within Boulder County. To that end, the District approached the Boulder County Land Use Department (Land Use Department), which was in the process of reviewing the Blue Mountain Vista TDR/PUD (PUD), to request that the Land Use Department designate the land at issue here as the site for the station. The Land Use Department declined to do so, indicating that it preferred that the City of Longmont provide fire protection services to the proposed PUD and surrounding area.

After the PUD was approved, the District met again with the Land Use Department, this time to discuss the District's plan to purchase the land, through agreement with the owners or condemnation, and to construct a fire station there. The District informed the Land Use Department that it believed the only approval process that it was required to complete was a Location and Extent Review, pursuant to section 30–28–110, C.R.S.2008. The Land Use Department, however, disagreed, maintaining that in addition to such Review, the District would need to submit the plan to a Special Use Review and to seek to amend the PUD, each pursuant to sections 3–202(A)(8) and 3–202(A)(9) of the Boulder Land Use Code.

Subsequently, the District submitted to the Land Use Department a completed application for Location and Extent Review. The Land Use Department, however, refused to accept the application for filing, reiterating that an amendment to the PUD was required. The District then filed a complaint

with the district court, asking the court to find, among other things, that the Land Use Department had exceeded its jurisdiction and abused its discretion in refusing to accept the application and in taking the position that the proposed project could not be completed absent an amendment to the PUD. The District further asked the court to declare that the fire station project could proceed and the land could be purchased without amendment to the PUD.

The County moved to dismiss for failure to state a claim upon which relief can be granted and for failure to join indispensable parties, pursuant to C.R.C.P. 12(b)(5), 12(b)(6), and 19. As to the indispensable party motion, the County argued that if the only review required was the Location and Extent Review, then the interests of the owners of the land at issue would not be adequately protected, thus making them indispensable parties under C.R.C.P. 19.

The court rejected both of the County's arguments and proceeded to the merits of the case. Thereafter, the District moved for summary judgment, and the court granted that motion. The court first found, as a matter of law, that the District, as a public entity, was not subject to zoning regulations. The court then determined that, because a PUD is considered a form of zoning, the District was not subject to the PUD regulations. The court thus issued a declaratory judgment that the District was not required to seek an amendment to the PUD in order to submit an application for Location and Extent Review. The County now appeals.

## II. Joinder of Indispensable Parties

The County first argues that the trial court erred in finding that the owners of the land were not indispensable parties. We disagree.

■ We review a trial court's denial of a motion to dismiss for failure to join indispensable parties for abuse of discretion. *Board of County Comm'rs v. Roberts*, 159 P.3d 800, 808 (Colo.App.2006) (citing *Dunne v. Shenandoah Homeowners Ass'n*, 12 P.3d 340, 344 (Colo.App.2000)). C.R.C.P. 19(a) states, in relevant part:

A person who is properly subject to service of process in the action shall be joined as a party in the action if: ... (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may: (A) [a]s a practical matter impair or impede his ability to protect that interest....

"Mere interest in the subject matter of litigation, even if the interest is substantial, is insufficient to make a party indispensable." *Roberts*, 159 P.3d at 807. "If the interests of the parties before the court may be finally adjudicated without adversely affecting the rights of an absent person, the absent party need not be joined." *Id.* at 808.

■ Here, the relief that the District sought in its complaint was narrow. The District asked the court to find, among other things, that the Land Use Department had exceeded its jurisdiction and abused its discretion in refusing to accept the District's application and in taking the position that the proposed project could not be completed absent an amendment to the PUD. A finding that the Land Use Department abused its discretion by refusing to perform the ministerial task of accepting the District's application in no way implicated the landowners' interests so as to make them indispensable parties. Nor did the District's request for a declaration that the project could proceed absent amendment to the PUD. At root, the question presented involved which process the District was required to employ in order to build its fire station. This determination did not impair the landowners' ability to protect their interests because, whether the court required a Location and Extent Review, as the District sought, or an amendment to the PUD, which the County believed to be required, the landowners would have had the opportunity to be heard and protect their interests through the applicable statutory processes. *See, e.g.*, § 24–67–106(3), C.R.S.2008 (requiring public hearing); §§ 38–1–101 to –122, C.R.S.2008 (procedures for eminent domain); *Blue River Defense Comm. v. Town of Silverthorne*, 33 Colo.App. 10, 14, 516 P.2d 452, 454 (1973) (even though certain entities had right to overrule county's decision under Planning Act, county resi-

dents were entitled to an opportunity to present their objections and views as part of the planning commission's approval process).

Accordingly, the trial court did not abuse its discretion by denying the County's motion to dismiss for failure to join the landowners as indispensable parties.

### III. Amendment of PUD

■ The County next contends, based on its interpretation of the Planned Unit Development Act of 1972, §§ 24–67–101 to –108, C.R.S.2008 (PUD Act), that the trial court erred in finding that the District did not have to amend the PUD to allow it to build a new fire station. Again, we are not persuaded.

■ We review the grant of summary judgment de novo. *Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Bd.*, 901 P.2d 1251, 1256 (Colo.1995). In interpreting statutory language, we must strive to give effect to the intent of the legislature. *Romanoff v. State Comm'n on Judicial Performance*, 126 P.3d 182, 188 (Colo.2006). "In doing so, our starting point is the plain meaning of the language used." *Id.* We should read the statute in such a way as to give effect to every word. *Id.* "We also must consider the language in the context of the statute as a whole." *Id.* We must "give effect to the ordinary meaning of the language and read the provisions as a whole, construing each consistently and in harmony with the overall statutory design, if possible." *People v. Cross,* 127 P.3d 71, 74 (Colo.2006). Interpretations that will render words or phrases superfluous should be rejected. *Id.* at 73. Only if a statute is reasonably susceptible of more than one meaning may we look to other sources to aid in our interpretation. *Romanoff,* 126 P.3d at 188.

This case requires us to examine the interplay between the PUD Act and the so-called Planning Act, §§ 30–28–101 to –139, C.R.S. 2008. The District claims that approval of its new fire station required only that it comply with the Planning Act. Under that Act, the District would submit "the proposed location and extent" of the planned fire station to the Land Use Department for approval. § 30–28–110(1)(a), C.R.S.2008. If the Land Use

Department were to disapprove the proposal, however, the District could overrule that Department by a majority vote of its governing board. § 30–28–110(1)(c), C.R.S.2008.

The County, on the other hand, claims that the District was required to comply with the requirements of the PUD Act. Under the PUD Act, a change in use of a parcel of land like that proposed by the District would be considered a modification of the PUD. § 24–67–106, C.R.S.2008. No such modification could be made, however, without first holding a public hearing in the manner designated by the County. §§ 24–67–104, 24–67–106(3)(b), C.R.S.2008. Moreover, pursuant to the PUD Act, the County has enacted certain provisions of the Boulder Land Use Code regarding the amendment of a previously approved PUD. Boulder County Land Use Code §§ 3–202(A)(9), 6–1100. The County contends that the District would also be required to amend the PUD pursuant to these provisions.

The trial court found that the District was required to comply solely with the Planning Act. We agree with the trial court.

■ Courts have long held that public entities "have the power to overrule or disregard the restrictions of county or municipal zoning regulations." *Reber v. S. Lakewood Sanitation Dist.,* 147 Colo. 70, 75, 362 P.2d 877, 880 (1961). Section 30–28–110(1)(b), C.R.S.2008, of the Planning Act codifies this rule, exempting a county's own facilities and operations from the county land use planning process. *See also Cottonwood Farms v. Bd. of County Comm'rs,* 725 P.2d 57, 59 (Colo. App.1986), *aff'd,* 763 P.2d 551 (Colo.1988). This exemption also applies to public facilities authorized or financed by public officials or entities falling outside the province of the county, including special districts like the District here. § 30–28–110(1)(c); *see also Reber,* 147 Colo. at 75, 362 P.2d at 879–80 (holding, under predecessor to section 30–28–110(1)(c), that sanitation district had the right to overrule county planning commission's disapproval of proposed sewage disposal plant, and noting that numerous courts have recognized that districts, authorities, and other state-authorized subdivisions have such authority even in the absence of definite statutory direction). Nowhere does the

Planning Act indicate that it applies only in the context of zoning decisions.

The PUD Act was enacted after the Planning Act and was added to the same chapter of the 1963 Colorado Revised Statutes, only four articles after the Planning Act. *See* Ch. 82, sec. 1, §§ 106–6–1 to –8, 1972 Colo. Sess. Laws 508–13; §§ 106–2–1 to –38, C.R.S.1963. Yet, nothing in the PUD Act suggests that it was intended to alter the broad exemption given to public entities in the Planning Act. To the contrary, a close reading of the language of the PUD Act supports the notion that public entities are exempt.

Section 24–67–106(3)(b), on the one hand, requires a party wishing to make a substantial change in use to a portion of a PUD to participate in the County review and amendment process discussed above. Nothing in this section states that it applies to public entities. Section 24–67–106(3)(b.5), C.R.S. 2008, on the other hand, expressly applies to public entities and sets forth the procedures to be followed when public entities holding legal title to land already set aside in a PUD for governmental uses wish to subdivide the land, release it from usage restrictions, or sell or dispose of it.

Notably, there is no analog to section 24–67–106(3)(b.5) governing situations in which land in a PUD is to be changed *to* a public use. Moreover, section 24–67–106(3)(b.5) requires the county to make certain findings regarding the change in land use, including a finding that the use of the land shall "be consistent with the efficient development and preservation of the entire planned unit development and with the plan." § 24–67–106(3)(b.5)(II), C.R.S.2008. The county must make the same finding, however, in considering an application under section 24–67–106(3)(b). Accordingly, if section 24–67–106(3)(b) were interpreted to apply to public entities, as the County contends, then the identical language in section 24–67–106(3)(b.5) would be superfluous. Accordingly, the language of the PUD Act demonstrates that public entities are exempt, except where the General Assembly has chosen to include them expressly.

The language and legislative history of the Planning Act likewise suggest a legislative intent to maintain the exemptions afforded public entities even after the enactment of the PUD Act. Section 30–28–110(1)(a) of the Planning Act is implicated whenever a master plan has been adopted. That Act, in turn, requires the adoption of a master plan whenever any sort of physical development is to be undertaken in an unincorporated portion of the county. § 30–28–106(1), C.R.S. 2008.

In 2007, twenty-five years after the PUD Act was in place, the Planning Act was amended to revise section 30–28–106(3)(a), C.R.S.2008. Ch. 165, sec. 1, § 30–28–106, 2007 Colo. Sess. Laws 612. Additional language was added to that section specifying that a master plan is considered advisory and is intended to guide land development decisions, until such time as it is included in the county's or region's "subdivision, zoning, platting, *planned unit development*, or other similar land development regulations," at which point it may be made binding. *Id.* (emphasis added). Thus, the Act specifically envisions the existence of PUDs. Nonetheless, the Act does not indicate that the exemptions granted to the public entities elsewhere in the Act do not apply in the context of a PUD.

■ In essence, the County asks us to conclude that the PUD Act should be interpreted to supersede the exemption from the county planning process long afforded public entities under the Planning Act and, prior to the enactment of that statute, at common law. We perceive nothing in the language of the statutes and have found no legislative history or other authority to suggest that the General Assembly intended to effectuate so dramatic a change in the existing law, particularly where, as here, that change would be implied, not express. As noted above, the provisions of the PUD Act on which the County relies are general in their terms and do not expressly reference public entities. *See* § 24–67–106(3)(b). The Planning Act, in contrast, does expressly reference public entities and authorizes them to overrule county planning decisions. § 30–28–110(1)(c). "[B]efore a later statute of general terms is deemed to revoke an existing provision of a statute which is specific in its terms, there

must be a clear and unmistakable intent to do so." *City of Colorado Springs v. Board of County Comm'rs*, 895 P.2d 1105, 1118 (Colo. App.1994). We perceive no such clear and unmistakable intent here. To the contrary, for the reasons noted above, the language of both the Planning Act and the PUD Act persuades us that the General Assembly did not intend to alter the broad exemption for public entities, except in those circumstances in which the Act expressly so provides. *See, e.g.,* § 24–67–106(3)(b.5).

The cases cited by the County concerning the requirements of the Land Use Act, §§ 24–65.1–101 to –502, C.R.S.2008, do not suggest otherwise. Indeed, if anything, these cases support the District's position here. In both *City & County of Denver v. Board of County Commissioners*, 782 P.2d 753, 766 (Colo.1989), and *City of Colorado Springs v. Board of County Commissioners*, 895 P.2d at 1118, the courts concluded that public entities were subject to the procedures of the Land Use Act and county regulations that were adopted pursuant thereto. In the Land Use Act, however, the General Assembly had expressly authorized counties to regulate certain public entities under specified conditions. *See, e.g.,* §§ 24–65.1–201 to –204, C.R.S.2008. Thus, these cases do not undermine the principle that public entities are exempt from zoning or other planning and development regulations. Rather, they demonstrate that for such planning regulations to apply to public entities notwithstanding section 30–28–110(1)(c) of the Planning Act, there must be express direction from the legislature to that effect. *City & County of Denver*, 782 P.2d at 766; *City of Colorado Springs*, 895 P.2d at 1118.

Finally, we note that our conclusion is fully consistent with the purposes of both the Planning Act and the PUD Act. On its face, the Planning Act gives substantial authority to public entities to act for the public good. *See* § 30–28–110, C.R.S.2008. Thus, public entities are required only to go through the Location and Extent Review process, which is not conclusively binding on them. § 30–28–110(1)(c); *see also Blue River Defense Comm.,* 33 Colo.App. at 14, 516 P.2d at 454. Such a process provides maximum flexibility.

The purpose of the PUD Act, on the other hand, is to allow "the flexibility necessary to permit adjustment to changing needs." *Tri–State Generation & Transmission Co. v. City of Thornton*, 647 P.2d 670, 677–78 (Colo.1982). This adaptability was a response to the perception that traditional zoning was overly rigid. *Id.* at 677.

Requiring public entities to comply with the stricter rules of the PUD Act when attempting to serve the public interest, as the County asks us to do here, would undermine the purposes of the Planning Act and would serve none of the purposes of the PUD Act. We have seen nothing to suggest that the General Assembly intended such a result.

For these reasons, we conclude that the District was required to complete only a Location and Extent Review under the Planning Act and was not required to seek an amendment of the PUD under the PUD Act or to comply with the County's related subdivision regulations.

The Judgment is therefore affirmed.

Judge VOGT concurs.

Judge RUSSEL dissents.

Judge RUSSEL dissenting.

The Hygiene Fire Protection District wants to condemn private property and build a firehouse there. Boulder County resists because the firehouse would disrupt a plan that the county adopted under the Planned Unit Development Act of 1972 (PUD Act), sections 24–67–101 to –108, C.R.S.2008. The issue is whether Hygiene Fire must obtain the county's permission.

The majority concludes that the answer is no. It declares that, as a public entity, Hygiene Fire is exempt from an enforcement provision in the PUD Act, section 24–67–106(3)(b), C.R.S.2008. From that premise, the majority reasons that Hygiene Fire need comply only with the Planning Act, which governs zoning decisions generally. *See* § 30–28–110, C.R.S.2008. And it concludes that, under the Planning Act, Hygiene Fire may overrule the county's decision. *See* § 30–28–110(1)(b), C.R.S.2008.

I respectfully disagree with this analysis. I think the legislature intended the PUD Act to apply to public entities such as Hygiene Fire. I therefore conclude that Hygiene Fire may not resort to the Planning Act but must comply with section 24–67–106(3)(b). I write separately to explain my view.

## A. Traditional Rule

The majority begins its analysis by recalling a traditional rule that allows public entities to disregard county or municipal zoning regulations. The majority states that this rule has been codified in section 30–28–110(1)(b). And its opinion reflects the assumption that, had the legislature wanted to depart from the rule in the PUD Act, it would have expressed its intent in unmistakable terms.

I disagree with this assumption. I think there are good reasons to question the nature and extent of the traditional rule, and I do not think that it should influence our analysis here.

The majority takes its view of the traditional rule from *Reber v. South Lakewood Sanitation District*, 147 Colo. 70, 362 P.2d 877 (1961). In that case, the supreme court held that a public entity could overrule a county planning commission under a particular statute. *Id.* at 75, 362 P.2d at 879. The court also stated, in dicta, that "[i]n the absence of such statute, courts of last resort have recognized that districts, authorities and other state authorized governmental subdivisions have the power to overrule or disregard the restrictions of county or municipal zoning regulations." *Id.* at 75, 362 P.2d at 879–80.

After reviewing the decisions cited in *Reber*, as well as subsequent decisions from Colorado and other states, I am inclined to doubt the existence of a single traditional rule. Instead of one consistent principle, courts have employed various rationales. *See Macon Ass'n for Retarded Citizens v. Macon–Bibb County Planning & Zoning Comm'n*, 252 Ga. 484, 314 S.E.2d 218, 222–23 (1984) (noting the superior sovereign test, governmental-proprietary test, eminent domain test, statutory guidance test, and balancing-of-interests test). These rationales may yield inconsistent results, depending on the nature of the entities and activities involved. *See generally* Elaine Marie Tomko–DeLuca, Annotation, *Applicability of Zoning Regulation to Governmental Projects or Activities*, 53 A.L.R.5th 1 (1997).

Here, we have a dispute between a county and a special district. Because both public entities are created and defined by statute, the result turns solely on legislative intent. In resolving this case, I would focus on the statutory text and would not distort the inquiry by presuming that a special district is exempt from a county's zoning regulation. *See City of Fargo v. Harwood Twp.*, 256 N.W.2d 694, 697 (N.D.1977) (declining to recognize the "inherent superiority" of a political subdivision that, like the zoning entity, derives its powers from the legislature); *cf. Clark v. Town of Estes Park*, 686 P.2d 777, 778–79 (Colo.1984) (a municipality is subject to its own zoning ordinances unless the "zoning ordinances specifically exempt municipal activity").

Thus, in the absence of plain language that answers the question directly, I would employ the usual tools of statutory construction to determine whether, under the PUD Act, the county may regulate the location of governmental activity conducted by a special district.

## B. Statutory Construction

"In construing a statute, our goal is to determine and give effect to the intent of the legislature and adopt the statutory construction that best effectuates the purposes of the legislative scheme." *Mishkin v. Young*, 107 P.3d 393, 396 (Colo.2005). "Often the best guide to legislative intent is the context in which the statutory provisions appear and any accompanying statement of legislative policy, such as a legislative declaration." *Stamp v. Vail Corp.*, 172 P.3d 437, 443 (Colo. 2007).

Unlike the majority, I see ample evidence of legislative intent to apply the PUD Act to public entities such as Hygiene Fire.

### 1. Legislative Purpose

The PUD Act is not just another zoning statute. It allows a county or municipality to create a comprehensive plan for land that is located in a single development district. *See* § 24–67–103(3), C.R.S.2008. It thus creates "an alternative to traditional zoning." *Bd. of County Comm'rs v. Bainbridge, Inc.,* 929 P.2d 691, 708 (Colo.1996).

In declaring the purposes of the PUD Act, the general assembly identified aims that could be attained only if public entities were required to comply:

> In order that the public health, safety, integrity, and general welfare may be furthered in an era of increasing urbanization and of growing demand for housing of all types and design, the powers set forth in this article are granted to all counties and municipalities for the following purposes:
> (a) To provide for necessary commercial, recreational, and educational facilities conveniently located to such housing;
>
> . . .
>
> (e) To encourage a more efficient use of land and of public services, or private services in lieu thereof, and to reflect changes in the technology of land development so that resulting economies may enure to the benefit of those who need homes;
> (f) To lessen the burden of traffic on streets and highways;
>
> . . .
>
> (i) To provide a procedure which can relate the type, design, and layout of residential, commercial, and industrial development to the particular site, thereby encouraging preservation of the site's natural characteristics; and
> (j) To encourage integrated planning in order to achieve the above purposes.

§ 24–67–102(1), C.R.S.2008.

The general assembly has directed us to "liberally construe[ ]" the PUD Act to further its purposes. § 24–67–107(6), C.R.S. 2008. In my view, this means that we must give broad effect to the enforcement provision at issue:

> Except as otherwise provided in paragraph (b.5) of this subsection (3), no substantial modification, removal, or release of the provisions of the plan by the county or municipality shall be permitted except upon a finding by the county or municipality, following a public hearing called and held in accordance with the provisions of section 24–67–104(1)(e) that the modification, removal, or release is consistent with the efficient development and preservation of the entire planned unit development, does not affect in a substantially adverse manner either the enjoyment of land abutting upon or across a street from the planned unit development or the public interest, and is not granted solely to confer a special benefit upon any person.

§ 24–67–106(3)(b).

But the majority has gone in the other direction. By adopting a narrow construction of section 24–67–106(3)(b), it allows public entities to disregard a unified plan of development. Under the majority's view, counties and municipalities cannot ensure that public recreational and educational facilities will be "conveniently located" near housing. *See* § 24–67–102(1)(a). Nor can they achieve an "efficient use of land and of public services." *See* § 24–67–102(1)(e). Instead, they must tolerate the unilateral decision of any public entity that has condemnation powers. This is the "antithesis of sound land use planning." *City of Fargo,* 256 N.W.2d at 697.

### 2. Additional Enforcement Provision

I recognize that the legislature expressly mentioned governmental entities in one part of the PUD Act but did not mention them in the enforcement provision at issue. Unlike the majority, however, I do not think that this feature is significant.

In section 24–67–106(3)(b.5), C.R.S.2008, the legislature addressed a specific question: What should happen if a county or municipality has set aside land for a particular public purpose, but the public entity that owns the land wants to do something else? In answering this question, the legislature allowed the public entity to act in certain ways, with the permission of the county or municipality:

> (b.5) (I) Subject to the requirements of subparagraph (II) of this paragraph (b.5),

in the case of any land located within a planned unit development that has been set aside for a governmental use or purpose as specified in the plan, the plan agreement, or related documents, a governmental entity that holds legal title to the land may, with the approval of the county or municipality in which the land is located, as applicable, and following a public hearing called for and held in accordance with the provisions of section 24–67–104(1)(e), do any of the following, singularly or in combination:

(A) Subdivide all or any portion of the land;

(B) Remove or release all or any portion of the land from any limitations on its use or purpose by the governmental entity as specified in the plan, the plan agreement, or related documents; or

(C) Sell or otherwise dispose of all or any portion of the land.

(II) Any action authorized in accordance with the requirements of subparagraph (I) of this paragraph (b.5) shall only be undertaken upon a finding by the county or municipality, as applicable, following the public hearing required pursuant to subparagraph (I) of this paragraph (b.5) that all or any portion of the land is not reasonably expected to be necessary for a governmental use or purpose or that the governmental use or purpose will be furthered by disposal of the land. Notwithstanding any other provision of this paragraph (b.5), where action has been undertaken in accordance with the requirements of this paragraph (b.5), the future use of all or any portion of the land shall in all other respects be consistent with the efficient development and preservation of the entire planned unit development and with the plan.

§ 24–67–106(3)(b.5).

I see nothing in subsection (b.5) that would exempt a public entity from complying with section 24–67–106(3)(b). Instead, I see a distinct set of standards that was enacted to address a distinct problem. And I do not think that the legislature intended to enact the kind of inconsistent scheme that results from the majority's interpretation. It makes little sense to subject a public entity to the county's control when the entity owns land within a planned unit development, and yet exempt the entity from control when the entity does not own the land but will take it through condemnation.

## C.  Conflicting Statutes

Were it not for the PUD Act, I would agree that Hygiene Fire could overrule the county's decision under section 30–28–110(1)(c), C.R.S.2008. This is a general review provision that applies whenever a county has adopted a master plan to guide development of unincorporated territory. *See* § 30–28–106, C.R.S.2008. But the enforcement provision of the PUD Act is more specific: it applies only when, as here, a planned unit development has given a master plan binding force that it would not otherwise have. *See* §§ 24–67–104(1)(f), 30–28–106(3)(a), C.R.S.2008.

Because the two enforcement provisions are irreconcilable, and because the PUD Act is more specific, I think section 24–67–106(3)(b) controls. *See* § 2–4–205, C.R.S. 2008; *B.G.'s, Inc. v. Gross*, 23 P.3d 691, 696 (Colo.2001). I therefore conclude that Hygiene Fire may not overrule the county's decision under section 30–28–110(1)(c). *Cf. City & County of Denver v. Bd. of County Comm'rs*, 782 P.2d 753, 766 (Colo.1989) (public entity may not rely on section 30–28–110(1)(c) to overrule regulations adopted under the Land Use Act, sections 24–65–101 to –65.1–502, C.R.S.2008).

Accordingly, I would reverse the trial court's order.